E-FILED
Friday, 11 March, 2022  10:16:41 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TROY KEMP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-cv-3167** |
| | ) | |
| **LEIDOS, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Leidos, Inc.'s Motion for Summary Judgment (d/e 22). Defendant has shown that there is no dispute of any material fact and that Defendant is entitled to judgment as a matter of law on each of the Counts alleged in the Complaint. Defendant's Motion (d/e 22) is, therefore, GRANTED.

## I.  FACTS

The Court draws the following facts from the parties' Local Rule 7.1(D)(1)(b) statements of undisputed material facts. The Court discusses any material factual disputes in its analysis. Immaterial facts or factual disputes are omitted. Any fact submitted by any party that was not supported by a citation to

evidence will not be considered by the Court.  See Civil LR

7.1(D)(2)(b)(2).  In addition, if any response to a fact failed to

support each allegedly disputed fact with evidentiary

documentation, that fact is deemed admitted.  Id.

Plaintiff Troy Kemp ("Plaintiff") was employed by Defendant

Leidos, Inc. ("Defendant" or "Leidos") from July 2014 until August

2016, when Defendant terminated Plaintiff's employment.  Plaintiff

is a White male and was originally hired by Defendant as Vice

President/Deputy Operations Manager of Design/Build.  In 2015,

Plaintiff was promoted to Senior Vice President of the Smart

Integration Unit of the Engineering Solutions Group at Leidos where

he was in charge of supervising up to 150 employees.  However,

because of a company reorganization, Plaintiff was demoted to Vice

President, Business Development Manager in the Business

Development and Sales Unit of the Engineering Solutions Group, in

which capacity he was not in charge of other employees.

In May 2016, Defendant's Human Resources Manager sent

Plaintiff an email containing a memorandum titled "FY16 BD

Incentive Program Memorandum" ("Program Memo").  In the

Program Memo, the Human Resources Manager informed Plaintiff

that he was "eligible to participate in the FY BD Incentive Program"

("Incentive Program") and directed Plaintiff to review the Program

Memo for the details of the Incentive Program.  In relevant part, the

Program Memo states,

> We [Leidos] have established a program to incentivize a
> small group of Business Development staff for FY16 in
> order to reward your contributions to the business's
> success. As a key member of the BD team, you are
> eligible to participate in this program . . . Participation in
> the FY16 BD Incentive Program does not guarantee a
> payout or change the at-will nature of your employment.

Def.'s Mot. (d/e 22), Ex. H.

On August 15, 2016, Plaintiff's supervisor, Randy Bull, sent

Plaintiff a memorandum terminating Plaintiff's employment.  While

the exact reasoning for Defendant's decision to terminate Plaintiff's

employment are in dispute,[1] it is undisputed that Defendant

terminated Plaintiff in August 2016.  Plaintiff was not given an

opportunity to enroll in any coaching or performance improvement

programs prior to his termination.  Neither party presents any

---

[1] Defendant asserts in paragraphs 9–14 of its statement of facts that Plaintiff was
terminated because of a company reorganization and because Defendant was no longer
pursuing work in Plaintiff's line of business.  While Plaintiff, on page 4 of his own statement of
facts, states that Plaintiff disputes those assertions, Plaintiff does not indicate the basis for the
dispute or the extent to which Defendant's statements are disputed.  See Local Rule 7.1(D)(2)(b)
("A failure to respond to any numbered fact will be deemed an admission of the fact").
However, as will be explained, this dispute over the precise reasoning for Plaintiff's termination
is immaterial because Plaintiff's claim of discrimination fails as a matter of law.

information as to what Plaintiff's ending salary was nor what kind of job experience or education Plaintiff had prior to his employment with Defendant.

On July 5, 2018, Plaintiff filed a three-Count Complaint against Defendant. (d/e 1). In the Complaint, Plaintiff alleged Defendant discriminated against him in violation of Title VII of the Civil Rights Act of 1964 when Defendant terminated Plaintiff's employment without allowing him to participate in a coaching or productivity improvement program. Plaintiff also alleged that Defendant violated Illinois law when Defendant did not pay Plaintiff a bonus following termination. Defendant now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, arguing that Defendant is entitled to judgment as matter of law on each of Plaintiff's claims.

## II. LEGAL STANDARD

Summary judgment under Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it

has that would convince a trier of fact to accept its version of events."  Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003).  On such a motion, the facts, and all reasonable inferences derived therefrom, are viewed in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016) (citing Cairel v. Alderden, 821 F.3d 823, 830 (7th Cir. 2016)).

A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of establishing that there is no genuine dispute as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)).  After the moving party does so, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 255 (quotation and footnotes omitted).

Summary judgment is only warranted when the moving party carries its initial burden and the non-moving party cannot establish an essential element of its case on which it will bear the burden of proof at trial.  Kidwell v. Eisenhauer, 679 F.3d 957, 964 (7th Cir. 2012).

### III.   ANALYSIS

Plaintiff alleged that Defendant discriminated against Plaintiff in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., that Defendant failed to pay Plaintiff his wages and bonuses earned in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/2, and that Defendant failed to pay Plaintiff an incentive bonus which constituted a breach of contract under Illinois law.  See Compl. (d/e 1).  Defendant moves for summary judgment on each claim.

**A.   Defendant is entitled to summary judgment on Count I: Discrimination in violation of Title VII of the Civil Rights Act of 1964.**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42

U.S.C. § 2000e-2(a)(1).  The ultimate legal standard on a summary judgment motion seeking to defeat a Title VII claim is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action."  Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7tht Cir. 2016).  If the plaintiff can provide such evidence, summary judgment must be denied.  See generally id.

A plaintiff can "avert summary judgment . . . either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the McDonnell Douglas formula."  Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 940 (7th Cir. 1997) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973)).  Apart from direct evidence of animus, such as express statements indicating a preference for or animosity against a protected group, circumstantial evidence generally includes evidence "from which an inference of discriminatory intent might be drawn."  Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).  Such evidence includes "(1) ambiguous statements or behavior towards other employees in the protected group; (2)

evidence, statistical or otherwise, that similarly situated employees
outside of the protected group systematically receive better
treatment; and (3) evidence that the employer offered a pretextual
reason for an adverse employment action." Morgan v. SVT, LLC,
724 F.3d 990, 995–996 (7th Cir. 2013). However, no single type of
circumstantial evidence is more persuasive than another, and each
kind is sufficient by itself. Troupe, 20 F.3d at 736. Still, summary
judgment for a defendant is appropriate if the plaintiff cannot
assemble enough circumstantial evidence to allow a trier of fact to
conclude that "it is more likely than not that discrimination lay
behind the adverse action." Morgan, 724 F.3d at 996.

Defendant argues that Plaintiff cannot show either direct
evidence of discrimination or successfully make out a prima facie
case under the McDonnell Douglas burden shifting approach. See
Def.'s Mot. (d/e 22). Plaintiff, in response, does not attempt to
make out a prima facie case under McDonnell Douglas. See Pl.'s
Resp. (d/e 23) p. 21, n.2. Instead, Plaintiff puts forth only
comparative circumstantial evidence to support his claim and rebut
Defendant's motion. More specifically, Plaintiff argues that
Defendant's actions with Plaintiff and other employees exhibited a

pattern which benefitted similarly situated employees who were
outside his protected group.  In doing so, Plaintiff puts forth three
comparator employees he argues were both similarly situated to
him and systematically received better treatment.

"To be similarly situated, an employee must be 'directly
comparable to [a plaintiff] in all material respects.'"  Bagwe v.
Sedgwick Claims Mgmt. Servs., Inc., 811 F.3d 866, 884 (7th Cir.
2016) (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676,
680 (7th Cir. 2002)).  Comparators need not be identical to the
plaintiff in every way, but the comparators must still be similar
enough to the plaintiff that "the distinctions between the plaintiff
and the proposed comparators are not 'so significant that [the
distinctions] render the comparison effectively useless.'"  Coleman
v. Donahoe, 667 F.3d 835, 846 (7th Cir. 2012) (quoting Humphries
v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007)).
Considerations for determining whether proffered comparators are
"similarly situated" include whether the proffered comparators "(i)
held the same job description, (ii) were subject to the same
standards, (iii) were subordinate to the same supervisor, and (iv)
had comparable experience, education, and other qualifications—

provided the employer considered these latter factors in making the personnel decision." <u>Bagwe</u>, 811 F.3d at 884 (quoting <u>Ajayi v. Aramark Bus. Servs., Inc.</u>, 336 F.3d 520, 532 (7th Cir. 2003)).

Plaintiff offers as proposed comparators Mr. Melendez, Ms. McBee, and Ms. Thomas. Plaintiff argues that each of the comparators are similarly situated and received better treatment as part of a pattern which discriminated against Plaintiff as a white male. As each of the proposed comparators were also terminated from their employment with Defendant, Plaintiff's only argument that the comparators were treated better by either being put on a performance improvement or coaching plan prior to termination or being reassigned to a different position within Defendant's organization.

Plaintiff has not carried his burden to provide enough evidence to prove that the proposed comparators were similarly situated. Plaintiff states only that Mr. Melendez was originally hired in 2016 by Defendant as a Vice President for Business Development within the Engineering Solutions Group and "headed the Ports and Securities segment [sic] in the commercial area of the unit [sic]." Pl.'s Resp. (d/e 23) p. 14. Similarly, Plaintiff only states that Ms.

McBee was employed as Vice President/Business Development
Director in the Engineering Solutions Group beginning in 2013 and
had "preceded [Plaintiff] in the commercial area [sic]" where she
"had been in charge of all commercial business development" in the
Engineering Solutions Group.  Id. at pp. 7, 11, 24.  Ms. Thomas,
Plaintiff states, was employed by Defendant "in a business
development position" in the Engineering Solutions Group
beginning in 2015 in which she "had business development
responsibilities."  Id. at pp. 13 & 24.  While McBee was, like
Plaintiff, supervised by James Moos, Thomas was supervised by
McBee.  Plaintiff does not specify who supervised Melendez.
Plaintiff also does not contest that Melendez worked in the Ports &
Securities division while Plaintiff worked in the Manufacturing and
Industrial division.  Moreover, Plaintiff does not offer any other
evidence to specify similarities between the work Plaintiff performed
and the work the comparators performed.  Plaintiff offers no factual
details other than those stated about any of the comparator's
positions, lengths of employment, salaries, education histories,
experience histories, or job duties to support Plaintiff's claim that
the proposed comparators were similarly situated to Plaintiff.  Even

when viewed in the light most favorable to Plaintiff, Plaintiff simply
has not provided enough evidence to show that McBee, Thomas, or
Melendez were "directly comparable" to Plaintiff "in all material
respects." Bagwe, 811 F.3d at 884.  Plaintiff cannot, therefore,
show that non-White and/or female similarly situated employees
systematically received better treatment than Plaintiff received.
Morgan, 724 F.3d at 995–996.

Plaintiff's final argument of direct proof of discrimination is
that Defendant placed "a premium" on hiring, promoting, and
retaining members of "traditional minority groups."  Pl.'s Resp. (d/e
23 p. 22.  When a plaintiff in a workplace discrimination case offers
as proof of discrimination an employer's "affirmative action plan,"
the plaintiff "must establish a link between the [employer's] policies
and its actions towards [the plaintiff]." Whalen v. Rubin, 91 F.3d
1041, 1045 (7th Cir. 1996).  "The mere existence of an affirmative
action policy is, however, insufficient to prove" intentional
employment discrimination.  Id.  The causal connection between the
policy and the adverse employment action is an essential
component of a policy-based argument.  Plaintiff, however, only
states Defendant had a policy in which the Vice President of Human

Resources encouraged considering diversity when making decisions regarding developing future leaders in the company.  Plaintiff does not provide evidence that the existence of the policy is connected to Plaintiff's termination.

Plaintiff has not offered any similarly situated individual against whom Defendant's conduct can be compared.  Further, Plaintiff has not established a causal link between Defendant's employment policies and Plaintiff's termination.  As a result, Plaintiff has not carried his burden to produce evidence from which an inference of discriminatory intent might be drawn. When viewed in the light most favorable to Plaintiff, the Court finds that no reasonable juror could find that Defendant terminated Plaintiff because of his race or sex.  Defendant's Motion for Summary Judgment (d/e 22) is, therefore, GRANTED as to the Title VII claim in Count I of the Complaint.

**B.  Defendant is entitled to summary judgment on Count II: Failure to Pay an "Earned" Bonus Under the Illinois Wage Payment and Collection Act.**

Defendant also seeks summary judgment as to Count II of the Complaint in which Plaintiff seeks payment of a bonus under the Illinois Wage Payment and Collection Act (the "Wage Act"), 820 ILCS

§ 115 et seq.  Under Section 5 of the Wage Act, employers are required to pay "the final compensation of separated employees in full . . . no later than the next regularly scheduled payday for such employee."  Id. at § 115/5.  "Final compensation" includes "wages, salaries, earned commissions, earned bonuses, and . . . any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the [two] parties."  Id. at § 115/2.  If an employer fails to pay a terminated employee his final compensation as required, the terminated employee may bring suit "for the timely and complete payment of earned wages and final compensation."  Khan v. Van Remmen, Inc., 756 N.E.2d 902, 912 (Ill. App. 2nd Dist. 2004).

The parties do not dispute that Defendant was an "employer" covered by the Wage Act or that Plaintiff was a "separated employee" entitled to the payment of final compensation.  Instead, the parties only argue whether the bonus offered in the Incentive Program was an "earned" bonus under the Wage Act.  The Court finds that the bonus was not an "earned bonus."

The Wage Act only regulates the payment of "earned" bonuses, not "discretionary" bonuses.  Sutula-Johnson v. Office Depot, Inc.,

893 F.3d 967, 975 (7th Cir. 2018).  While the Act does not provide a definition of "earned" bonuses and "discretionary" bonuses, the regulations promulgated by the Illinois Department of Labor provide a detailed explanation of the difference between the two.  A bonus is considered "earned" when "there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met."  56 Ill. Admin. Code § 300.500(a).  A bonus is "discretionary" when "the terms associated with the earning of the bonus are indefinite or uncertain, such as bonus being upon a positive evaluation of the 'employee's performance' and not when the earning of a bonus is based on objective factors such as length of service, attendance or sign-on or relocation incentives." Id. § 300.500(d).

Defendant argues that Defendant's Business Development Incentive Program (the "Incentive Program") in which Plaintiff participated did not constitute an unequivocal promise for an "earned" bonus under the Wage Act.  Defendant argues that the plain language of the Memo establishing the terms of the Incentive

Program makes any potential bonus received therefrom discretionary.  In response, Plaintiff argues that the potential bonus outlined in the Incentive Program was an "earned" bonus because the Program Memo set individual and organizational performance goals and contained "mandatory terms" such as "the word 'will.'" Pl.'s Resp. (d/e 23) pp. 29–30.

The Court finds that the Incentive Program outlined a discretionary bonus, not an earned bonus because the Program Memo did not state an unequivocal promise that a bonus would be paid.  The Program Memo expressly stated that "[p]articipation in the [Incentive Program] does not guarantee a payout or change the at-will nature of [Plaintiff's] employment."  Def. Mot. (d/e 22) Ex. H. That language alone signals that Defendant was not offering an "unequivocal promise" that Plaintiff would receive a bonus payment. See 56 Ill. Admin. Code § 300.500(a).

Moreover, even without that express conditional language, the Program Memo informing Plaintiff of his eligibility to participate in the Incentive Program outlined exactly what it says: eligibility.  The Program Memo stated that "[a]s a key member of the [business Development] team, [Plaintiff is] eligible to participate in" the

Incentive Program.  Def.'s Mot. (d/e 22) Ex. H.  The Program Memo also stated how "any payout" would be calculated, including that the "formula will be weighted 80% toward Individual Goals . . . with the remaining 20% based upon Organizational Goals." Id.  The Program Memo clarified that "[a]s a participant in the [Incentive Program], [Plaintiff's] annual cash incentive will be calculated based upon a target bonus component." Id.

"Eligibility, of course, is no guarantee." Hess v. Bresney, 784 F.3d 1154, 1162 (7th Cir. 2015).  Like the bonus in Hess, the fact that the Program Memo contained declaratory words like "will" does not render the proposed incentive an "earned" bonus.  The terms within the Program Memo containing the word "will" all follow the express conditional language that Plaintiff would only be eligible for the Program.  Such conditional language cuts against Plaintiff's claim that the terms created a guarantee. See Hess, 784, F.3d at 1162.

Finally, though the Program Memo outlined individual and organizational goals on which "any payout will be based," Def.'s Ex. H., Plaintiff concedes that he did not actually meet the set goals. Pl.'s Resp. (d/e 23) p. 28. Under Section 300.500(a) of Title 56 of

the Illinois Administrative Code, "all of the required conditions for receiving the bonus set forth in the bonus agreement" must have "been met" in order for a terminated employee to force payment of an "earned" bonus.  Because Plaintiff concededly did not meet those goals, Plaintiff cannot prove that the bonus was "earned."

Defendant has shown that the potential bonus payment outlined in the Incentive Program was not an "earned" bonus under the Wage Act.  Based on the undisputed material facts, Defendant has shown that it is entitled to summary judgment as to Plaintiff's Wage Act claim, and Defendant's Motion (d/e 22) is GRANTED as to Count II.

**C.     Defendant is entitled to summary judgment on Count II: Breach of Contract.**

Lastly, Defendant seeks summary judgment on Plaintiff's breach of contract claim.  Under Illinois law, a plaintiff alleging a breach of contract must show: (1) the existence of a valid and enforceable contract, (2) substantial performance of the contract, (3) a breach of that contract, and (4) damages resulting from the alleged breach.  Swyear v. Fare Foods Corp., 911 F.3d 874, 886 (7th Cir. 2018).  To show that a policy statement or program like the

Incentive Program created a valid and enforceable contract in the employment setting, the language of the alleged contract "must contain a promise clear enough that an employee would reasonably believe that an offer has been made." <u>Duldulao v. Saint Mary of Nazareth Hosp. Ctr.</u>, 115 Ill.2d 482, 490 (Ill. 1987).

Defendant made no clear promise here. As stated above, the Program Memo expressly stated that "[p]articipation in the [Incentive Program] does not guarantee a payout or change the at-will nature of [Plaintiff's] employment." Def. Mot. (d/e 22) Ex. H. That express statement of the continuing at-will nature of Plaintiff's employment cannot be read to state a promise clear enough for any employee to reasonably believe an offer had been made. That language also cannot be read to create a clear promise that an employee would be entering into a contract for a bonus payment. Instead, the language clearly indicates that no promises or offers were being made to employees who chose to participate in the Incentive Program.

Defendant has shown, as a matter of law, that no reasonable juror could find that a reasonable employee would have understood the Program Memo to contain a clear promise made by Defendant.

Plaintiff's breach of contract claim, therefore, fails at the outset. Defendant's Motion (d/e 22) is GRANTED as to Plaintiff's breach of contract claim in Count III of the Complaint.

## IV.    CONCLUSION

On the undisputed material facts, when viewed in the light most favorable to Plaintiff, Defendant has shown that there is no issue remaining for a trial.  Defendant has shown that it is entitled to judgment as a matter of law on each of Plaintiff's three claims in the Complaint.  Therefore, Defendant's Motion for Summary Judgment (d/e 22) is GRANTED in full, and this case is closed.  The Clerk is directed to enter judgment in favor of Defendant Leidos, Inc.  Each party to bear its own costs.

**IT IS SO ORDERED.**
**ENTERED: March 10, 2022.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**